RICHARD L HOLCOMB (HI Bar No. 9177)
JUSTIN A. BRACKETT (HI Bar No. 9954)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI  96813
Telephone: (808) 545-4040
Email: rholcomblaw@live.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELOIS CHIN, | CASE NO. 1:14-CV-406 |
| Plaintiff, | |
| vs. | |
| NORTHLAND GROUP, INC., | COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, EXHIBITS ONE THROUGH NINE, and VERIFICATION |
| LVNV FUNDING, LLC, and | |
| ALLIED INTERSTATE, LLC, | JURY TRIAL REQUESTED |
| Defendants. | |

## COMPLAINT

## <u>INTRODUCTION</u>

1.     This is an action for damages against the Defendants for violations of the

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 <u>et seq.</u>

[ 1 ]

## JURISDICTION

2.      Subject matter jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 (federal question jurisdiction).

3.      This action arises out of violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") by all Defendants, in their illegal efforts to collect consumer debts.

4.      Venue is proper in this District because the acts and transactions occurred here and Plaintiff resides here.

## PARTIES AND PERSONAL JURISDICTION

5.      Plaintiff, Elois Chin (hereinafter referred to as "Plaintiff" and/or "Ms. Chin") is a resident of this State, District and Division who is authorized by law to bring this action.

6.      Defendant Northland Group, Inc. ("hereinafter referred to as "Defendant Northland" or "Northland") is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and a for-profit corporation organized under the laws of the State of Minnesota.  Defendant Northland can be served by personal service upon its registered agent, to wit:  Steven Guttman, 220 S. King Street, 19th Floor, Honolulu, HI  96813.

7.      Defendant LVNV Funding, LLC (hereinafter "Defendant LVNV" or "LVNV") is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and a for-profit

[ 2 ]

corporation organized in Delaware, and maintains Corporation Service Company, 1703

Laurel Street, Columbia, SC 29223, as its registered agent for service of process.

8.     Defendant Allied Interstate, LLC (hereinafter "Defendant Allied Interstate"

or "Allied Interstate") is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and a for

profit corporation organized in Minnesota, and maintains CT Corporation Services, Inc.,

100 South 5th Street, Suite 1075, Minneapolis, MN 55402 as its registered agent for

service of process.

9.     Defendants are subject to the jurisdiction and venue of this Court.

10.     Other defendants may be discovered in the course of litigation, and

Plaintiff respectfully prays that the Court will permit the addition of later discovered

parties upon motion.

## FACTUAL ALLEGATIONS

11.     Defendants have alleged that Plaintiff incurred an obligation to pay

money arising out of a transaction in which the money, property, insurance or services

which are the subject of the transaction are primarily for personal, family or household

purposes, and this debt is therefore a "debt" as that term is defined by 15 U.S.C. §

1692a(5).  More specifically, this debt is a credit card debt originally owed to or

serviced by Direct Merchants Credit Card Bank, N.A. which assigned an account

number ending in 9350.

12.     Defendants use mail in their businesses.

13.     Defendants use telephone communications in its business.

14.     The primary purpose of all Defendants' businesses is the collection of debts.

15.     Defendants regularly collect, or attempt to collect, debts owed, or due, or asserted to be owed or due to another.

16.     Defendants are all debt collectors subject to the provisions of the Fair Debt Collection Practices Act.

### *March 4, 2013 Collection Letter from Defendant Allied Interstate*

17.     Ms. Chin has received letters in an attempt to collect the purported debt from Defendant Allied Interstate.

18.     Ms. Chin received a letter from Defendant Allied Interstate dated March 4, 2013.   A true and exact copy of the March 4, 2013 letter is attached as **Exhibit One**.

19.     The March 4, 2013 collection letter identified the Original Creditor as "Direct Merchants Cre" with the Original Account Number ending in 9350.

20.     The March 4, 2013 collection letter identified Defendant LVNV Funding, LLC as the "Creditor."

21.     The March 4, 2013 collection letter demanded the amount of $2,270.24 on

the account ending in 9350 as of March 4, 2013.  **Exhibit One**.

22.     The March 4, 2013 collection letter also assigned two separate account numbers "A7078298/P60794271."  **Exhibit One**.

23.     March 4, 2013 collection letter also includes a "Privacy Notice" that purports to announce the privacy policies of "the Sherman Companies."  The "Sherman Companies" include Defendant LVNV but not Defendant Allied Interstate or Defendant Northland.  **Exhibit One**.

24.     The privacy notice specifically states that the Sherman Companies will share information with third parties "to service or enforce accounts."  **Exhibit One**. The March 4, 2013 notice also specifically states that it may share collected information with third party affiliates, presumably any company listed as a "related company" to the Sherman Companies.  **Exhibit One**.

25.     The March 4, 2013 letter also demands payment be mailed to Defendant Allied Interstate but that the check may be made payable to either Defendant Allied Interstate or Defendant LVNV.  **Exhibit One**.

### *May 3, 2013 Collection Letter from Defendant Allied Interstate*

26.     Ms. Chin received another letter from Defendant Allied Interstate dated May 3, 2013.  A true and exact copy of the May 3, 2013 letter is attached as **Exhibit Two**.

27.     The May 3, 2013 collection letter demanded the amount of $2,289.44 on the account ending in 9350 as of May 3, 2013.  The May 3, 2013 letter identified the Original Creditor as "Direct Merchants Cre" with the Original Account Number ending in 9350.  **Exhibit Two**.

28.     The May 3, 2013 collection letter only refers to Account Number P60794271.  **Exhibit Two**.  There is no mention of Account Number A70780298, nor any indication of what steps must be taken or money must be paid to satisfy that account.  **Exhibit Two**.

29.     The May 3, 2013 collection letter identified Defendant LVNV Funding, LLC as the "Creditor."  **Exhibit Two**.

30.     The May 3, 2013 collection letter also states that "LVNV Funding LLC has given us authority to settle your account . . ."  **Exhibit Two**.

31.     The May 3, 2013 collection demands payment be sent to Defendant Allied Interstate.  **Exhibit Two**.

### *August 6, 2013 Collection Letter from Defendant Allied Interstate*

32.     Ms. Chin received another letter from Defendant Allied Interstate dated August 6, 2013.  A true and exact copy of the August 6, 2013 letter is attached as **Exhibit Three**.

33.     The August 6, 2013 collection letter demanded the amount of $2,320.58

on the account ending in 9350 as of August 6, 2013. **Exhibit Three**.

34.    The August 6, 2013 collection letter identified "Direct Merchants Credit Card Bank, N.A." with the Account Number ending in 9350.  **Exhibit Three**.

35.    The August 6, 2013 collection letter also identified Defendant LVNV Funding, LLC as the "Current Creditor" with the Account Number ending in 2330. **Exhibit Three**.

36.    The August 6, 2013 Allied Interstate letter also includes a "Privacy Notice" that purports to announce the privacy policies of "the Sherman Companies." The "Sherman Companies" include Defendant LVNV but not Defendant Allied Interstate or Defendant Northland.  **Exhibit Three**.

37.    Despite having specifically identified LVNV Funding, LLC as the "Current Creditor" and specifically identifying the Direct Merchants Credit Card Bank, N.A. account, the letter begins:  "[w]e are a debt collection company and our client, Resurgent Capital Services, LP, has retained us to collect the debt noted above." **Exhibit Three**.

38.    The August 6, 2013 letter also makes no mention of either account number previously established by Allied Interstate, instead assigning a "Reference Number" of 570004354509.  **Exhibit Three**.

39.    The August 6, 2013 letter demands payment be sent to Defendant Allied

Interstate but does not inform Ms. Chin as to whether the check should be made payable to Defendant Allied Interstate, Defendant LVNV, and/or the newly identified yet unknown entity, "Resurgent Capital Services, LP."  **Exhibit Three**.

### *September 9, 2013 Collection Letter from Defendant Allied Interstate*

40.     Ms. Chin received another letter from Defendant Allied Interstate dated September 9, 2013.  A true and exact copy of the September 9, 2013 letter is attached as **Exhibit Four**.

41.     The September 9, 2013 collection letter demanded the amount of $2,332.22 on the account ending in 9350 as of September 9, 2013.  The September 9, 2013 letter identified the "Direct Merchants Credit Card Bank, N.A." with the Account Number ending in 9350.  **Exhibit Four**.

42.     The September 9, 2013 collection letter identified Defendant LVNV Funding, LLC as the "Current Creditor."  **Exhibit Four**.

43.     In the same envelope as the collection letter was a second document on Defendant titled "**PRIVACY NOTICE"** and stated that it was being given on behalf of the "Sherman Companies" and their affiliates (hereinafter "the Privacy Notice"). (emphasis in original)

44.     The Privacy Notice was a "communication" made in connection with collection of a debt and in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

45.     The "Sherman Companies" include Defendant LVNV but not Defendant Allied Interstate or Defendant Northland, and the list of "Sherman Companies" is now different from those previously listed by Defendant Allied Interstate.  **Exhibit Four**.

46.     In contrast to the March 4, 2013 letter, **Exhibit One**, this September 9, 2013 privacy notice specifically states that the Sherman Companies "do not share collected information about customers or former customers with third parties...." **Exhibit Four**.

47.     However, the September 9, 2013 privacy notice also specifically states that it may share information with third party "affiliates," presumably each entity in the modified list of purported "related companies" of the Sherman Companies.  **Exhibit Four**.

48.     Moreover and despite having specifically identified LVNV Funding, LLC as the "Current Creditor" and specifically identifying the Direct Merchants Credit Card Bank, N.A. account, the letter begins:  "[w]e are a debt collection company and our client, Resurgent Capital Services, LP, has retained us to collect the debt noted above." **Exhibit Four**.

49.    Defendant Allied Interstate's Privacy Notice contains the following statements in pertinent part:

**<u>Information We May Collect</u>**.  The Sherman Companies may collect the following personal information: (1) information that we receive from your account file at the time we purchase or begin to service your account, <u>such as your name, address, social security number, and assets</u>; (2) information that you may give us through discussion with you, or that we may obtain through your transactions with us, <u>such as your income and payment history</u>; (3) information that we receive from consumer reporting agencies, <u>such as your creditworthiness and credit history</u>, and (4) information that we obtain from other third party information providers, such as public records and databases that contain publicly available data about you, such as bankruptcy and mortgage filings. All of the personal information that we collect is referred to in this notice as "collected information".   (Bold and underline in original) (emphasis added)

. . .

### Sharing Collected Information with Affiliates

From time to time, the Sherman Companies may share collected information about customers and former customers <u>with each other in connection with administering and collecting accounts</u>.... (Bold and underline in original) (emphasis added)

**Exhibit Four**.

50.    The FDCPA forbids a debt collector from discussing a consumer's debt with any third parties except under limited circumstances not present here.

51.    The September 9, 2013 letter also makes no mention of either account number previously established by Allied Interstate, instead again referring only to a "Reference Number" of 570004354509.  **Exhibit Four**.

52.    The September 9, 2013 letter demands payment be sent to Defendant Allied Interstate but does not inform Ms. Chin as to whether the check should be made payable to Defendant Allied Interstate, Defendant LVNV, and/or the previously identified yet unknown entity, "Resurgent Capital Services, LP."  **Exhibit Four**.

### *November 12, 2013 Collection Letter from Defendant Allied Interstate*

53.    Ms. Chin received another letter from Defendant Allied Interstate dated November 12, 2013.  A true and exact copy of the November 12, 2013 letter is attached as **Exhibit Five**.

[11]

54.    The November 12, 2013 collection letter demanded the amount of

$2,353.79 on the account ending in 9350 as of November 12, 2013.  The November 12,

2013 letter identified "Direct Merchants Credit Card Bank, N.A." with the account

number ending in 9350.  **Exhibit Five**.

55.    The November 12, 2013 collection letter identified Defendant LVNV

Funding, LLC as the "Current Creditor."  **Exhibit Five**.

56.    The November 12, 2013 collection letter also includes a "Privacy Notice"

that purports to announce the privacy policies of "the Sherman Companies."  The

"Sherman Companies" include Defendant LVNV but not Defendant Allied Interstate

or Defendant Northland and the list of "Sherman Companies" is markedly different

from those previously listed on March 4, 2013 and August 6, 2013 by Defendant

Allied Interstate.  **Exhibit Five**.

57.    In contrast to the March 4, 2013 letter, **Exhibit One**, this November 12,

2013 privacy notice specifically states that the Sherman Companies "do not share

collected information about customers or former customers with third parties...."

**Exhibit Five**.

58.    Again, the November 12, 2013 privacy notice specifically states that it

may share information with third party "affiliates," presumably each entity in the

modified list of purported "related companies" of the Sherman Companies.  **Exhibit**

**Five**.

59.     Defendant Allied Interstate's Privacy Notice again contains the following statements in pertinent part:

> **<u>Information We May Collect</u>**.   The Sherman Companies may collect the following personal information: (1) information that we receive from your account file at the time we purchase or begin to service your account, <u>such as your name, address, social security number, and assets</u>; (2) information that you may give us through discussion with you, or that we may obtain through your transactions with us, <u>such as your income and payment history</u>; (3) information that we receive from consumer reporting agencies, <u>such as your creditworthiness and credit history</u>, and (4) information that we obtain from other third party information providers, such as public records and databases that contain publicly available data about you, such as bankruptcy and mortgage filings. All of the personal information that we collect is referred to in this notice as "collected information".   (Bold and underline in original) (emphasis added)
>
> . . .

**<u>Sharing Collected Information with Affiliates</u>**

From time to time, the Sherman Companies may share collected

information about customers and former customers <u>with each other</u>

<u>in connection with administering and collecting accounts</u>.... (Bold

and underline in original) (emphasis added)

**Exhibit Five**.

60.     Moreover and despite having specifically identified LVNV Funding, LLC

as the "Current Creditor" and specifically identifying the Direct Merchants Credit Card

Bank, N.A. account, the letter begins:  "[w]e are a debt collection company and our

client, Resurgent Capital Services, LP, has retained us to collect the debt noted above."

**Exhibit Five**.

61.     The November 12, 2013 letter also makes no mention of either account

number previously established by Allied Interstate, instead again referring to only a

"Reference Number" of 570004354509.  **Exhibit Five**.

62.     The November 12, 2013 letter demands payment be sent to Defendant

Allied Interstate but does not inform Ms. Chin as to whether the check should be made

payable to Defendant Allied Interstate, Defendant LVNV, and/or the unknown entity,

"Resurgent Capital Services, LP."  **Exhibit Five**.

[14]

### *January 15, 2014 Collection Letter from Defendant Northland*

63.     Ms. Chin has received letters attempting to collect the purported debt from Defendant Northland.

64.     The first letter from Northland is dated January 15, 2014 and is attached as **Exhibit Six**.

65.     The January 15, 2014 collection letter from Northland demands the amount of $2,379.13 for the Direct Merchants Credit Card Bank, N.A. account ending in 9350. **Exhibit Six**.

66.     The January 15, 2014 collection letter identifies Direct Merchants Credit Card Bank, N.A. as the Original Creditor with the original account number ending in 9350.  **Exhibit Six**.

67.     The January 15, 2014 collection letter identifies Defendant LVNV as the "Current Account Owner" and assigns a new account number of F10426628 to the account. **Exhibit Six**.

68.     Despite Defendant Northland's claim, plainly stated in the January 15, 2014 collection letter, that the "Current Account Owner" is Defendant LVNV, it demands payment be made to Defendant Northland, either by calling Defendant Northland, submitting payment on Defendant Northland's website (www.payments2northland.com) or mailing payment to Defendant Northland's P.O.

Box. **Exhibit Six**.

69.     The January 15, 2014 collection letter contains a "Privacy Notice" that states that Ms. Chin's information may be shared with third parties, specifically "affiliates" of the Sherman Companies. **Exhibit Six**.  Those third parties presumably include any of the "related companies" of the Sherman Companies listed in the notice. **Exhibit Six**.

70.     Defendant Northland's Privacy Notice contains the following statements in pertinent part:

> **<u>Information We May Collect</u>**.  The Sherman Companies may collect the following personal information: (1) information that we receive from your account file at the time we purchase or begin to service your account, <u>such as your name, address, social security number, and assets</u>; (2) information that you may give us through discussion with you, or that we may obtain through your transactions with us, <u>such as your income and payment history</u>; (3) information that we receive from consumer reporting agencies, <u>such as your creditworthiness and credit history</u>, and (4) information that we obtain from other third party information providers, such as public records and databases that contain

publicly available data about you, such as bankruptcy and mortgage filings. All of the personal information that we collect is referred to in this notice as "collected information".   (Bold and underline in original) (emphasis added)

. . .

**Sharing Collected Information with Affiliates**

From time to time, the Sherman Companies may share collected information about customers and former customers with each other in connection with administering and collecting accounts.  (Bold and underline in original) (emphasis added)

**Exhibit Six**.

71.    The FDCPA forbids a debt collector from discussing a consumer's debt with any third parties except under limited circumstances not present here.

### *February 19, 2014 Collection Letter from Defendant Northland*

72.    Ms. Chin received another letter from Defendant Northland, dated February 19, 2014.  A true and exact copy of the February 19, 2014 Collection Letter is attached as **Exhibit Seven**.

73.    The February 19, 2014 collection letter demands the amount of $2,389.75

for the Direct Merchants Credit Card Bank, N.A. account ending in 9350. **Exhibit Seven**.

74.     The February 19, 2014 collection letter identifies Defendant LVNV as the "Current Account Owner" and identifies the new account number of F10426628. See **Exhibit Seven**.

75.     Despite the February 19, 2014 collection letter's claims that the "Current Account Owner" is Defendant LVNV, it demands payment be made to Defendant Northland, either by calling Defendant Northland, submitting payment on Defendant Northland's website (www.payments2northland.com) or mailing payment to Defendant Northland's P.O. Box. See **Exhibit Seven**.

### *March 21, 2014 Collection Letter from Defendant Northland*

76.     Ms. Chin received another letter from Defendant Northland, dated March 21, 2014.  A true and exact copy of the March 21, 2014 Collection Letter is attached as **Exhibit Eight**.

77.     The March 21, 2014 letter from Northland demands the amount of $2,401.73 for the Direct Merchants Credit Card Bank, N.A. account ending in 9350. **Exhibit Eight**.

78.     The letter identifies Defendant LVNV as the "Current Account Owner" and identifies the new account number of F10426628. See **Exhibit Eight**.

79.     Despite the March 21, 2014 letter's claims that the "Current Account Owner" is Defendant LVNV, it demands payment be made to Defendant Northland, either by calling Defendant Northland, submitting payment on Defendant Northland's website (www.payments2northland.com) or mailing payment to Defendant Northland's P.O. Box. See **Exhibit Eight**.

## *May 24, 2014 Collection Letter from Defendant Northland*

80.     Ms. Chin received another letter from Defendant Northland, dated May 24, 2014.  A true and exact copy of the May 24, 2014 Collection Letter is attached as **Exhibit Nine**.

81.     The May 24, 2014 letter from Northland demands the amount of $2,423.30 for the Direct Merchants Credit Card Bank, N.A. account ending in 9350. **Exhibit Nine**.

82.     The letter identifies Defendant LVNV as the "Current Account Owner" and identifies the new account number of F10426628. See **Exhibit Nine**.

83.     Despite the May 24, 2014 letter's claims that the "Current Account Owner" is Defendant LVNV, it demands payment be made to Defendant Northland, either by calling Defendant Northland, submitting payment on Defendant Northland's website (www.payments2northland.com) or mailing payment to Defendant Northland's P.O. Box. See **Exhibit Nine**.

[19]

84.    Ms. Chin has sustained actual damages as a result of Defendants' conduct, including but not limited to, the time and expense she has spent in addressing these violations.

## CAUSES OF ACTION

### *COUNT ONE:*
### *VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT*

### FIRST VIOLATION OF THE
### FAIR DEBT COLLECTION PRACTICES ACT:
### FALSE OR MISLEADING REPRESENTATIONS

85.    The acts of Defendants constitute violations of the Fair Debt Collection Practices Act.  Defendants' violations of the FDCPA include, but are not limited to, the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, which is a violation of 15 U.S.C. § 1692e.

86.    The letters from Allied Interstate and Northland demand odd amounts. For example, Allied Interstate represented that the balances due on the account were: $2,270.24 on March 4, 2013; $2,289.44 on May 3, 2014; $2,320.58 on August 6, 2013; $2,332.22 on September 9, 2013; and $2,353.79 on November 12, 2013.  Ms. Chin is confused as to how Allied Interstate calculated the amount owed and what authority they have to demand unfamiliar and changing amounts of interest, *i.e.*, 5.145% from March 4, 2013 until May 3, 2013; 5.226% from May 3, 2013 until August 6, 2013; 5.385% from August 6, 2013 until September 9, 2013; and 5.275% from September 8,

2013 until November 12, 2013.

87.     Defendants' representations become even more misleading wherein the rate of interest being applied to the account increased to the rate of 6.14% when the balance jumped from the $2,353.79 purportedly owed on November 12, 2013 as represented by Defendant Allied Interstate to the $2,379.13 purportedly owed as represented by Defendant Northland on January 15, 2014.

88.     Defendant Northland continued to represent that odd amounts were owed: $2,389.75 on February 19, 2014; $2,401.73 on March 21, 2014; and, $2,423.30 on May 24, 2014.  Moreover, a calculation of the amounts purportedly due demonstrates that Defendant Northland continued to attempt to collect odd and different rates of interest:   4.655% between January 15, 2014 to February 19, 2014; 6.099% from February 19, 2014 to March 27, 2014; and 5.122% between March 21, 2014 and May 24, 2014.

89.     Ms. Chin asserts that none of these rates of interest were the correct contractual rate of interest on her Direct Merchants Credit Card Bank, N.A. account ending in 9350.

90.     A calculation of the time between the letters and the amounts demanded in the letters shows that an unknown rate of interest and/or fees is being applied by Defendants.  This makes the balance increase at a rate that does not comply with the

terms of the initial contract.

91.     By assigning different account balances and an unknown rate of interest to the underlying account, Defendants have confused Ms. Chin as to what amount of money she owes on this account.

92.     By assigning different account balances and interest rates to the same account, none of which are the applicable contract rate of interest, Defendants have confused Ms. Chin as to what amount of money she owes on this account.

93.     The letters from Defendants demand very odd amounts from Ms. Chin and she is confused as to how Defendants calculated said amounts and what authority they have to demand unfamiliar rates of interest.

94.     Defendants never state the amount of interest being applied to the account in any of their correspondences.

95.     Furthermore, by asserting in each of its letters that the "Current Creditor" is Defendant LVNV, but demanding payments be sent to Allied Interstate and/or Northland at their respective addresses, telephone numbers, or websites, Defendants have confused the least sophisticated consumer as to what company Ms. Chin allegedly owes the money.

96.     By changing who is collecting the debt, Defendants did mislead and confuse Ms. Chin as to who she owes for the Direct Merchants Credit Card Bank, N.A.

97.    Defendant Allied Interstate assigned an account number of A70780298/P60794271 in its March 4, 2013 letter, **Exhibit One**, and referred to the account only as number P6079421 in its May 3, 2013 letter, **Exhibit Two**.  However, neither the August 6, 2013 letter, the September 9, 2013 letter, nor the November 12, 2013 letter refer to these previously assigned account numbers.  **Exhibits Three, Four,** and **Five**.  Instead, each of the last three letters refers to a purported LVNV account number ending in 2330.  *Id.*  Ms. Chin asserts none of these numbers were ever the account number for her Direct Merchants Credit Card Bank, N.A. account.

98.    More than one account number was generated by Defendant Allied Interstate for the one account, and she is confused as to which account that Defendant Allied Interstate is collecting and/or as to why the account numbers would change as of August, September and November 2013.

99.    The letters from Defendant Northland assign yet another account number of F10426628. See **Exhibits Six, Seven, Eight,** and **Nine**.  Ms. Chin asserts this was never the account number for her Direct Merchants Credit Card Bank, N.A. account, and was never the account number assigned by Defendant LVNV which Defendants purport is the "Current Account Owner."  Defendant Northland deceived Ms. Chin as to which account it is collecting.

100.   Defendant Allied Interstate also first demanded payment be made to

Defendant Allied Interstate or to Defendant LVNV. **Exhibit One**. Then, Defendant Allied Interstate represented "LVNV Funding LLC has given us authority to settle your account . . ." but failed to specify to whom the check should be made payable. **Exhibit Two**. However, on August 6 2013, September 9, 2013, and again on November 12, 2013, Defendant Allied Interstate represented that the "Current Creditor" was Defendant LVNV but that Defendant Allied Interstate's "client" was an unknown entity, Resurgent Capital Services, LP. **Exhibits Three** through **Five**. Defendant Allied Interstate did not specify to whom payment should be made. *Id.* Ms. Chin has been deceived and/or misled as to who owns the account, under what authority Defendant Allied Interstate could offer to settle the account, or who Ms. Chin should pay.

101.   By repeatedly changing the account number, Defendants did mislead and deceive Ms. Chin as to which account they were collecting.

## SECOND VIOLATION OF THE
## FAIR DEBT COLLECTION PRACTICES ACT:
## <u>FALSE OR MISLEADING REPRESENTATIONS</u>

102.   The acts of Defendants constitute violations of the Fair Debt Collection Practices Act.  Defendants' violations of the FDCPA include, but are not limited to, the use of false, deceptive, or misleading representations in connection with the character, amount, or legal status of the alleged debt, which is a violation of 15 U.S.C. §1692e(2).

103.   The actual amount of the alleged debt is certainly in question. It is overly confusing as to what amount is owed because the balances changed from $2,270.24 on March 4, 2013 to: $2289.44 on May 3, 2014; $2,320.58 on August 6, 2013; $2,332.22 on September 9, 2013; $2,353.79 on November 12, 2013; $2,379.13 on January 15, 2014; $2,389.75 on February 19, 2014; $2,401.73 on March 21, 2014; and finally, $2,423.30 on May 24, 2014.

104.   By demanding amounts that increase by irregular rates of interest, Defendants have confused Ms. Chin as to what amount of money, if any, she owes on this account.

105.   Ms. Chin asserts that the changing balances demanded by Defendants demonstrate that Defendants have no knowledge of the correct amount owed, if any. Further, Defendants are deceiving Ms. Chin and attempting to keep her confused as to the amount owed so that if she were to make payments on this account she would never know the actual amount owed, and instead would keep paying indefinitely on fees, interest, or other charges that were never legally owed by her.

106.   Further, Defendant LVNV and/or Defendant Allied Interstate did mislead Ms. Chin by informing her that "The Sherman Companies do not share collected information about customers or former customers with third parties . . ." but demonstrably, one or both Defendants then did share Ms. Chin's protected information

with Defendant Northland.

107.   Defendant Allied Interstate also first demanded payment be made to Defendant Allied Interstate or to Defendant LVNV.  **Exhibit One**.  Then, Defendant Allied Interstate represented "LVNV Funding LLC has given us authority to settle your account . . ." but failed to specify to whom the check should be made payable. **Exhibit Two**.  However, on August 6 2013, September 9, 2013, and again on November 12, 2013, Defendant Allied Interstate represented that the "Current Creditor" was Defendant LVNV but that Defendant Allied Interstate's "client" was an unknown entity, Resurgent Capital Services, LP.  **Exhibits Three** through **Five**. Defendant Allied Interstate did not specify to whom payment should be made.  *Id*. Defendant Allied Interstate misled Ms. Chin as to who owns the account, under what authority Defendant Allied Interstate could offer to settle the account, and/or who Ms. Chin should pay.

### THIRD VIOLATION OF THE
### FAIR DEBT COLLECTION PRACTICES ACT:
### <u>UNFAIR PRACTICES</u>

108.   The acts of Defendants constitute violations of the Fair Debt Collection Practices Act.  Defendants' violations of the FDCPA include, but are not limited to, the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement

creating the debt or permitted by law, which is a violation of 15 U.S.C. §1692f(1).

109.   The amounts sought by Defendants in their various communications include rates of interest and various fees not expressly authorized by the agreement creating the debt or permitted by law, and thus were in direct violation of 15 U.S.C. § 1692f(1).

110.   The letters from Defendants assert that different balances are owed, each greater than that originally demanded, and after calculating the time that had passed between letters and the change in the amount owed it is obvious the interest and fees charged were not applied consistently, and thus could not be in compliance with the original agreement creating the debt.

111.   Ms. Chin asserts her contractual rate of interest was never the amount of 5.385%, which is the rate applied to the account by Defendant Allied Interstate as of September 9, 2013.

112.   Ms. Chin asserts her contractual rate of interest was never the amount of 5.275%, which is the rate applied to the account by Defendant Allied Interstate for the time period from September 9, 2013 until November 12, 2013.

113.   Ms. Chin asserts her contractual rate of interest was never the amount of 6.14%, which is the rate applied to the account by Defendant Northland for the time period from November 12, 2013 until January 15, 2014.

114.   Ms. Chin asserts her contractual rate of interest was never the amount of 4.655%, which is the rate applied to the account by Defendant Northland for the time period from January 15, 2014 until February 19, 2014.

115.   Ms. Chin asserts her contractual rate of interest was never the amount of 6.099%, which is the rate applied to the account by Defendant Northland for the time period from February 19, 2014 until March 27, 2014.

116.   Ms. Chin asserts her contractual rate of interest was never the amount of 5.122%, which is the rate applied to the account by Defendant Northland for the time period from March 21, 2014 until May 24, 2014.

117.   Defendants are demanding rates of interest that are not authorized by the agreement creating the debt or permitted by law.

118.   The amounts sought by Defendants in their various communications include rates of interest and various fees not expressly authorized by the agreement creating the debt or permitted by law, and thus were demands in direct violation of 15 U.S.C. § 1692f(1).

**FOURTH VIOLATION OF THE
FAIR DEBT COLLECTION PRACTICES ACT:
DISCLOSURES TO THIRD PARTIES**

119.   Without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, a debt

collector's communication with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector, in connection with the collection of any debt is a violation of 15 U.S.C. § 1692c(b).

120.    The FDCPA forbids a debt collector from discussing a consumer's debt with any third parties except under limited circumstances not present here.

121.    For that reason, without the prior consent of the consumer given directly to the Defendants, they may not communicate with any other person in connection with the collection of the debt, except Plaintiff, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector, other than for the purpose of acquiring "location information".

122.    Defendant LVNV communicated with at least two separate third party entities, to wit:  Defendants Northland and Allied Interstate.

123.    Upon information and belief, Defendant Allied Interstate also communicated with Defendant Northland.

124.    These third party disclosures were violations of 15 U.S.C. § 1692c(b).

125.    Moreover, both Defendants Allied Interstate and Northland specifically represented that Ms. Chin's private financial information may be disclosed to third party "affiliates," which presumably includes any entity listed as a "related company" to the

Sherman Companies.  **Exhibits One**, and **Three** through **Six**.  Neither Defendant Allied Interstate nor Defendant Northland are listed as a third party "affiliate."  *Id*.

126.   When Defendants made the disclosures and/or threatened to make disclosures, Defendants were already aware of all three items of information that are included in the definition of "location information" – where Ms. Chin lived, her telephone number, and her place of employment.

127.   The statement that Defendants communicate with other parties outside of the parties enumerated under the FDCPA is misleading and deceptive.

128.   It misleads the least sophisticated consumer into believing that third parties may be contacted and asked to provide information concerning the Plaintiff other than "location information", when the FDCPA forbids such third party contact.

129.   This conduct and these communications mislead the least sophisticated consumer into believing that Defendants may provide and/or contact third parties to seek "nonpublic personal information", including the fact that Plaintiff owes a debt to Defendant, when the FDCPA forbids such disclosure.  Indeed the facts of this case demonstrate that each of the Defendants did so.

130.   Any procedures maintained (i.e., actually employed or implemented) by Defendants to avoid errors under the FDCPA failed to avoid misleading communications with Plaintiffs regarding Defendants' ability to communicate with third

parties outside the list enumerated by the FDCPA when they were already aware of all three items of information that are included in the definition of "location information".

131.   If false, the statement that Defendants communicate, in connection with collection of the debt, with third parties outside of the parties enumerated under the FDCPA in violation of 15 U.S.C. §§ 1692b(1), 1692b(2), and 1692c(b), is misleading and deceptive in violation of the FDCPA, 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10), and is an unfair means to collect or attempt to collect the alleged debt in violation of 15 U.S.C. § 1692f.

132.   If true, the third party contact is patently unlawful.

133.   Ms. Chin alleges that Defendants have shared her private information with other third parties as it is Defendants' standard operating procedure.

134.   This irresponsible sharing of private information to third parties in connection with the collection of any debt is a blatant violation of 15 U.S.C. § 1692c(b).

***COUNT TWO:***
***VIOLATIONS OF THE HAWAIʻI REVISED STATUTES***

**FIRST VIOLATION OF THE HAWAI'I REVISED STATUTES:**
**FALSE OR MISLEADING REPRESENTATIONS**

135.   The acts of Defendants constitute violations of the Hawai'i Revised Statutes.   Violations include, but are not limited to, any false representation or

implication of the character, extent, or amount of a claim against a debtor or alleged debtor, or of its status in any legal proceeding.  Such conduct is a violation of Haw. Rev. Stat. §  443B-18(5).

136.   The underlying debt is disputed.

137.   The letters from Defendants demand odd amounts from Ms. Chin and she asserts they have demanded unfamiliar and inconsistent rates of interest and/or fees.

138.   The letters from Allied Interstate and Northland demand odd amounts.

139.   Allied Interstate represented that the balances due on the account were: $2,270.24 on March 4, 2013; $2,289.44 on May 3, 2014; $2,320.58 on August 6, 2013; $2,332.22 on September 9, 2013; and $2,353.79 on November 12, 2013.

140.   Ms. Chin is confused as to how Allied Interstate calculated the amount owed and what authority they have to demand unfamiliar and changing amounts of interest, *i.e.*, 5.145% from March 4, 2013 until May 3, 2013; 5.226% from May 3, 2013 until August 6, 2013; 5.385% from August 6, 2013 until September 9, 2013; and 5.275% from September 8, 2013 until November 12, 2013.

141.   Defendants' representations become even more misleading wherein the rate of interest being applied to the account increased to 6.14% from the $2,353.79 purportedly owed on November 12, 2013, as represented by Defendant Allied Interstate, to the $2,379.13 purportedly owed January 15, 2014, as represented by

Defendant Northland.

142.   Defendant Northland continued to represent that odd amounts were owed: $2,389.75 on February 19, 2014; $2,401.73 on March 21, 2014; and, $2,423.30 on May 24, 2014.  Moreover, a calculation of the amounts purportedly due demonstrates that Defendant Northland continued to attempt to collect odd and different rates of interest:  4.655% between January 15, 2014 to February 19, 2014; 6.099% between February 19, 2014 through March 27, 2014; and 5.122% between March 21, 2014 and May 24, 2014.

143.   Ms. Chin asserts that none of these rates of interest were the correct contractual rate of interest on her Direct Merchants Credit Card Bank, N.A. account ending in 9350.

144.   A calculation of the time between the letters and the amounts demanded in the letters shows that an unknown rate of interest and/or fees is being applied by Defendants.  This makes the balance increase at a rate that does not comply with the terms of the initial contract.

145.   By assigning different account balances and an unknown rate of interest to the underlying account, Defendants have made false representations or implications as to the amount of money Ms. Chin owes on this account.

146.   The letters from Defendants demand very odd amounts from Ms. Chin

and she is confused as to how Defendants calculated said amounts and what authority they have to demand an unfamiliar amount of interest.

147.   Defendants never state the amount of interest being applied to the account in any of their correspondences.

148.   Furthermore, by asserting in each of its letters that the "Current Creditor" is Defendant LVNV, but demanding payments be sent to Allied Interstate and/or Northland at their respective addresses, telephone numbers, or websites, Defendants have made false representations or implications as to the character of the debt.

149.   By changing who is collecting the debt, Defendants did mislead and confuse Ms. Chin as to who she owes for the Direct Merchants Credit Card Bank, N.A.

150.   Defendant Allied Interstate assigned an account number of A70780298/P60794271 in its March 4, 2013 letter, **Exhibit One**, and referred to the account only as number P6079421 in its May 3, 2013 letter. **Exhibit Two**.  However, neither the August 6, 2013 letter, the September 9, 2013 letter, nor the November 12, 2013 letter refer to the previously assigned account number.  **Exhibits Three, Four,** and **Five**.  Instead, each of the last three letters refers to a purported LVNV account number ending in 2330.  *Id*.  Ms. Chin asserts none of these numbers were ever the account number for her Direct Merchants Credit Card Bank, N.A. account.

151.   More than one account number was generated by Defendant Allied

Interstate for the one account, and she is confused as to which account Defendant Allied Interstate is collecting and/or why the account numbers would change as of August, September and November 2013.

152.   The letters from Defendant Northland assign yet another account number of F10426628. See **Exhibits Six, Seven, Eight,** and **Nine**.  Ms. Chin asserts this was never the account number for her Direct Merchants Credit Card Bank, N.A. account, and was never the account number assigned by Defendant LVNV which Defendants purport is the "Current Account Owner."  Ms. Chin is confused as to which account Defendant Leading Edge is collecting.

153.   By repeatedly changing the account number, Defendants did make false representations to Ms. Chin about which account they were collecting.

154.   Defendant Allied Interstate also first demanded payment be made to Defendant Allied Interstate or to Defendant LVNV.  **Exhibit One**.  Then, Defendant Allied Interstate represented "LVNV Funding LLC has given us authority to settle your account . . ." but failed to specify to whom the check should be made payable. **Exhibit Two**.  However, on August 6 2013, September 9, 2013, and again on November 12, 2013, Defendant Allied Interstate represented that the "Current Creditor" was Defendant LVNV but that Defendant Allied Interstate's "client" was an unknown entity, Resurgent Capital Services, LP.  **Exhibits Three** through **Five**.

Defendant Allied Interstate did not specify to whom payment should be made. *Id.* Ms. Chin is confused as to who owns the account, under what authority Defendant Allied Interstate could offer to settle the account, or who Ms. Chin should pay.

## SECOND VIOLATION OF THE HAWAI'I REVISED STATUTES: FALSE OR MISLEADING REPRESENTATIONS

155.    Any representation that an existing obligation of the debtor or alleged debtor may be increased by the addition of attorney's fees, investigation fees, service fees, and any other fees or charges when in fact the fees or charges may not legally be added to the existing obligations violates Haw. Rev. Stat. §  443B-18(8).

156.    Upon information and belief, Ms. Chin asserts that Defendants did not have authority to impose additional fees on the originating account.

157.    Defendants' attempts to collect additional fees or charges are collection attempts for amounts not expressly authorized by the agreement or permitted by law.

158.    By adding interest, fees, or other charges which the original contract did not allow, Defendants added fees or charges that may not legally be added to the existing obligation, and thus violated Haw. Rev. Stat. §  443B-18(8).

## THIRD VIOLATION OF THE HAWAI'I REVISED STATUTES: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

159.    The acts of Defendant Leading Edge constitute violations of the Hawai'i Revised Statutes.  Violations include, but are not limited to, the collection of or the

attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless the interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the debtor or alleged debtor; or unless the interest or incidental fee, charge, or expense is expressly authorized by law.  Such conduct violates Haw. Rev. Stat. §  443B-19(2).

160.   Upon information and belief, Ms. Chin asserts that Defendants did not have authority to impose additional fees on the originating account.

161.   By assessing unwarranted interest, fees or charges, Defendants have demanded amounts that are not expressly authorized by the agreement creating the debt or permitted by law.

162.   Defendants' collection of additional fees are collection attempts for amounts not expressly authorized by the agreement.

163.   Ms. Chin asserts her contractual rate of interest was never the amount of 5.385%, which is the rate applied to the account by Defendant Allied Interstate as of September 9, 2013.

164.   Ms. Chin asserts her contractual rate of interest was never the amount of 5.275%, which is the rate applied to the account by Defendant Allied Interstate for the time period from September 9, 2013 until November 12, 2013.

165.   Ms. Chin asserts her contractual rate of interest was never the amount of

6.14%, which is the rate applied to the account by Defendant Northland for the time period from November 12, 2013 until January 15, 2014.

166.  Ms. Chin asserts her contractual rate of interest was never the amount of 4.655%, which is the rate applied to the account by Defendant Northland for the time period from January 15, 2014 until February 19, 2014.

167.  Ms. Chin asserts her contractual rate of interest was never the amount of 6.099%, which is the rate applied to the account by Defendants for the time period from February 19, 2014 until March 27, 2014.

168.  Ms. Chin asserts her contractual rate of interest was never the amount of 5.122%, which is the rate applied to the account by Defendant Northland for the time period from March 21, 2014 until May 24, 2014.

169.  By assigning different account balances and interest rates to the same account, none of which are the applicable contract rate of interest, Defendants have made a false representations or implications of the character, extent, or amount of money Ms. Chin owes.

170.  The letters from Defendants demand very odd amounts from Ms. Chin and she is confused as to how Defendants calculated said amounts and what authority they have to demand unknown and unauthorized rates of interest.

## FOURTH VIOLATION OF THE HAWAI'I REVISED STATUTES:
## THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

171.   Violations of the Hawai'i Revised Statutes include, but are not limited to, the collection of or the attempt to collect from a debtor or alleged debtor all or any part of the collection agency's fees or charges for services rendered.  Such conduct is a violation of Haw. Rev. Stat. §  443B-19(3).

172.   Upon information and belief, Ms. Chin asserts that Defendants did not have authority to impose additional fees on the originating account.

173.   Defendants have attempted or are attempting to collect collection agency fees or charges for services rendered, in violation of Haw. Rev. Stat. § 443B-19.

## FIFTH VIOLATION OF THE HAWAI'I REVISED STATUTES:
## THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

174.   The collection of or the attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless the interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the debtor or alleged debtor; or unless the interest or incidental fee, charge, or expense is expressly authorized by law is a violation of Haw. Rev. Stat. § 443B-19(4).

175.   Allied Interstate represented that the balances due on the account were: $2,270.24 on March 4, 2013; $2,289.44 on May 3, 2014; $2,320.58 on August 6, 2013;

$2,332.22 on September 9, 2013; and $2,353.79 on November 12, 2013.  Ms. Chin is confused as to how Allied Interstate calculated the amount owed and what authority they have to demand unfamiliar and changing amounts of interest, *i.e.*, 5.145% from March 4, 2013 until May 3, 2013; 5.226% from May 3, 2013 until August 6, 2013; 5.385% from August 6, 2013 until September 9, 2013; and 5.275% from September 8, 2013 until November 12, 2013.

176.   Defendants' representations become even more misleading wherein the rate of interest being applied to the account increased to 6.14% from the $2,353.79 purportedly owed on November 12, 2013, as represented by Defendant Allied Interstate, to the $2,379.13 purportedly owed as represented by Defendant Northland on January 15, 2014.

177.   Defendant Northland continued to add unauthorized interest by demanding:  $2,389.75 on February 19, 2014; $2,401.73 on March 21, 2014; and, $2,423.30 on May 24, 2014.  A calculation demonstrates that Defendant Northland is attempting to add odd and unauthorized rates of interest as follows:  4.655% between January 15, 2014 to February 19, 2014; 6.099% between February 19, 2014 through March 27, 2014; and 5.122% between March 21, 2014 and May 24, 2014.

178.   A calculation of the time between the letters and the amounts demanded in the letters shows that the balance increased at rates that do not comply with the terms

of the initial contract.  Furthermore, none of the interest rates applied by Defendants are authorized by law.

## SIXTH VIOLATION OF THE HAWAI'I REVISED STATUTES:
## FALSE REPRESENTATIONS AND
## THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

179.   Section 443B-18 of the Hawai'i Revised Statutes requires debt collectors to "disclose clearly the name and full business address of the person to whom the claim has been assigned for collection or to whom the claim is owed at the time of making any demand for money" and prohibits "the use of any company name other than the true name of the collection agency."

180.   By asserting, in all of its letters, that the "Current Creditor" is Defendant LVNV Funding, LLC but demanding payments be sent to Defendant Allied Interstate at its address, Defendant Allied Interstate has violated Section 443B-18 of the Hawai'i Revised Statutes.

181.   Defendant Allied Interstate also first demanded payment be made to Defendant Allied Interstate or to Defendant LVNV.  **Exhibit One**.  Then, Defendant Allied Interstate represented "LVNV Funding LLC has given us authority to settle your account . . ." but failed to specify to whom the check should be made payable. **Exhibit Two**.  However, on August 6 2013, September 9, 2013, and again on November 12, 2013, Defendant Allied Interstate represented that the "Current

Creditor" was Defendant LVNV but that Defendant Allied Interstate's "client" was an unknown entity, Resurgent Capital Services, LP. **Exhibits Three** through **Five**. Defendant Allied Interstate did not specify to whom payment should be made. *Id*. By asserting that Defendant LVNV is the "Current Creditor," but that Resurgent Capital Services, LP had somehow given Defendant Allied Interstate authority to settle the account, and/or by first representing that payment could be made to either Defendant Allied Interstate or Defendant LVNV but failing to later identify to whom payment could be made, Defendant Allied Interstate has violated Section 443B-18 of the Hawaii Revised Statutes.

182.   By changing who is collecting the debt, Defendant LVNV did mislead and confuse Ms. Chin as to who she owes for the Direct Merchants Credit Card Bank, N.A. account.

183.   By asserting, in all of its letters, that the "Current Account Owner" is Defendant LVNV Funding, LLC but demanding payments be made by sending the payment to Defendant Northland at its address, through its telephone system, or at its website, Defendant Northland has violated Section 443B-18.

### CAUSE OF ACTION NUMBER THREE: INTRUSIONS UPON PLAINTIFF'S SECLUSION AND VIOLATIONS OF HER RIGHT TO PRIVACY

184.   Ms. Chin never consented to Defendants contacting third parties.

[ 42 ]

185.   Ms. Chin is concerned as to why Defendants are communicating her private, privileged, and exceptionally personal financial information to third parties.

186.   Defendants violated Ms. Chin's right to privacy and committed an intrusion upon her seclusion when they communicated her personal information to third parties without first obtaining her express written consent to do so.

187.   Defendants intruded upon Ms. Chin's seclusion by relaying her personal information to third party debt collectors.

188.   Ms. Chin is extremely agitated and distressed over Defendants' sharing of her private personal and financial information with third parties.

189.   Ms. Chin has sustained actual damages as a result of Defendants' conduct, including but not limited to, the time and expense she has spent in addressing these violations.

### *Summary*

190.   The above-detailed conduct by Defendants and their agents in connection with collection of the debt, was conduct in violation of numerous and multiple provisions of the FDCPA and Hawai'i Revised Statutes including, but not limited to the above-cited provisions.

191.   As a result of Defendants' actions, Ms. Chin is entitled to an award of actual damages, statutory damages, as well as an award of costs and attorney fees.

*Respondeat Superior Liability*

192.   In addition to their individual liability under the FDCPA, the acts and omissions of Defendants Allied Interstate and Northland as agents for the Defendant LVNV were committed within the time and space limits of their agency relationship its principal, Defendant LVNV.

193.   The acts and omissions by Defendants Allied Interstate and Northland were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by Defendant LVNV in collecting consumer debts.

194.   By committing these acts and omissions against Plaintiff, Defendants Allied Interstate and Northland were motivated to benefit their principal, Defendant LVNV.

195.   Defendant LVNV is therefore liable to Plaintiff through the Doctrine of Respondeat Superior, for the intentional and negligent acts, errors, and omissions done in violation of federal law by the debt collectors employed as agents by Defendant LVNV during its attempts to collect the debt from Plaintiff.

## **TRIAL BY JURY**

196.   Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against any or all Defendants and in favor of the Plaintiff as follows:

a)     Declaratory judgment that any or all Defendants violated Ms. Chin's rights under the Fair Debt Collection Practices Act;

b)     Declaratory judgment that any or all Defendants violated Ms. Chin's rights under the Hawai'i Revised Statutes;

c)     That Plaintiff be awarded actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every defendant in an amount to be determined at a trial by a jury;

d)     That Plaintiff be awarded statutory damages pursuant to 15 U.S.C. §1692k(a)(2);

e)     That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to 15 U.S.C. §1692k(a)(3);

f)     That Plaintiff be awarded actual damages pursuant to Haw. Rev. Stat. §  480-13 in an amount to be determined by a jury at trial;

g)     That Plaintiff be awarded statutory damages of not less than $1,000.00 pursuant to Haw. Rev. Stat. §  480-13;

[ 45 ]

h)     That Plaintiff be awarded treble damages if three times the amount of damages determined by a jury at trial exceeds $1,000 pursuant to Haw. Rev. Stat. § 480-13.

i)     That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to Haw. Rev. Stat.  § 480-13;

j)     That the Court declare all defenses raised by Defendant to be insufficient; and

k)     Such other and further relief, including injunctive relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

Respectfully submitted this the 8th day of <u>September</u>, 2014.


<u>/s/ Justin A. Brackett</u>
Richard L. Holcomb, #9177
Justin A. Brackett, #9954
Holcomb Law, LLLC
Attorneys for Plaintiff
1136 Union Mall, Suite 808
Honolulu, TN 96813
(808) 545-4040
rholcomblaw@live.com